### Carol PERCUOCO, Plaintiffs,

v.

**HAMPTON HOUSE CONDOMINIUM, Board of Managers of Hampton House Condominium and Goodstein Management Inc., Defendants.**

**No. 91 Civ. 2345 (RPP).**

United States District Court,
S.D. New York.

June 10, 1991.

Stuart Eisler, New York City, for plaintiff.

Harold M. Foster, New York City by Louise M. Cherkis, for defendants/third party plaintiffs.

Francis J. Young, P.C., Hartsdale, N.Y. by Francis J. Young, for third party defendants Local 32B–32–J and Gus Bevona.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Plaintiff Carol Percuoco brought this action on April 24, 1990, in Supreme Court of the State of New York, New York County, charging defendants Hampton House Condominium, Board of Managers of Hampton House Condominium and Goodstein Management Inc. with negligent management and operation of the premises at 404 East 79th Street, New York, resulting in the rape of plaintiff therein on March 17, 1990. The incidents giving rise to the action are alleged to be the abduction of the plaintiff in the building's elevator and the resulting rape of plaintiff on the roof of the premises at one o'clock in the morning. Both areas were monitored by closed circuit television cameras. The complaint alleges that the doorman on duty, Nadel Santiago, failed either to observe that an intruder was in the building or tha an assault was taking place, or otherwise did not perform his duties so as to prevent the assault. It was further alleged in court that the doorman and a tenant observed the abduction and the assault taking place, by means of the closed circuit television monitors, and did nothing to prevent it.

On March 5, 1991, counsel for defendants/third party plaintiffs served a third party summons on the third party defendants, Local 32B–32J of the AFL–CIO

Service Employees International Union, Gus Bevona, President of Local 32B–32J, and Marilyn M. Levine, Contract Arbitrator.[1] Third party defendants removed the action to this Court on April 5, 1991, as the third party complaint raised a federal question under the Labor Management Relations Act and state jurisdiction was thus preempted. *See Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985).

On May 3, 1991, the defendants/third party plaintiffs moved to remand both complaints to state court and plaintiff moved to sever the third party action and remand the original complaint to state court. On May 13, 1991, the third party defendants filed a motion to dismiss the third party complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

On May 21, 1991, third party defendants filed papers supporting plaintiff's motion to sever and remand the main action to state court. On June 6, 1991, defendants/third party plaintiffs filed papers opposing third party defendants' motion to dismiss or for summary judgment and opposing plaintiff's motion to sever and remand only the main action. All motions were made returnable on June 7, 1991 and argument has been had thereon.

The third party complaint is grounded on the claim that "[i]f plaintiff was caused to sustain injuries and damages at the time and place and in the manner alleged in the complaint, through any carelessness, recklessness and negligence, the said injuries and damage was [sic] caused by the gross carelessness, recklessness and negligence of the third party defendants and the breach of contractual obligations, through actions outside the scope of authority contemplated by agreement, abuse of discretion, and breach of warranties on the part of the third-party defendants." Third Party Complaint, ¶ 17. The contractual obligations and warranties are based on the collective bargaining agreement between the union and the owners and managers of the premises (a copy of which is attached to the Affirmation of Louise M. Cherkis, May 15, 1991).

The gravamen of the third party complaint is that the third party defendants prevented the defendants/third party plaintiffs from discharging Nadel Santiago for watching television in the garage attendant's office in December, 1987, and for wasting the time of a sales agent on February 8, 1988, events which took place approximately two years before the incidents at issue. This allegation is based on the union's demand for a hearing before Ms. Levine, the contract arbitrator, under the terms of the collective bargaining agreement, which hearing resulted in Santiago's reinstatement in October, 1988.[2]

It is clear from the defendants'/third party plaintiffs' papers that upon the reinstatement of Santiago in October 1988, the defendants/third party plaintiffs continued to employ Santiago as a doorman and thereafter reassigned Santiago to be the sole doorman on the 12 midnight to 8 a.m. shift. *See* Affidavit of Neil Levin, June 5, 1991 ("Levin Aff."), ¶¶ 1–5. The defendants/third party plaintiffs argue that the third party defendants are liable because the union breached the collective bargaining agreement by representing Santiago in the 1988 proceeding before the arbitrator without proper evaluation, thereby breaching its duty of fair dealing. Affirmation of Louise M. Cherkis, May 15, 1991 ("Cherkis Aff."), ¶¶ 4–5.

Defendants/third party plaintiffs further claim that due to the terms of the collective bargaining agreement, the union exercised control over management decisions, citing

---

**1.** It has been stipulated that Ms. Levine is no longer a defendant in this action.

**2.** On October 14, 1988, after holding hearings on June 27, 1988 and September 28, 1988, the arbitrator found that "although there is some culpability on the part of the grievant [Santiago], it does not warrant the extreme penalty of discharge" and reinstated Santiago forthwith to his former position, with seniority and benefits but without back pay, deeming as a disciplinary suspension the period from discharge to reinstatement.

the requirement of a union shop, the grievance procedure and certain other terms relating to prior notice for changes in assignments or duties, including the fact that the grievance process could be activated if the union and employee were dissatisfied with any such change. Levin Aff., ¶ 5. They state that "the bottom line is that the employer was obligated by the agreement with the union to share control of the hiring and firing process with the union." Cherkis Aff., ¶ 5. Defendants/third party plaintiffs point out that under certain circumstances the union also reserved to itself "a right to dismiss employees," Cherkis Aff., ¶ 6, based on the union's right to seek discharge of employees who are not union members in good standing, under Article 1 of the collective bargaining agreement.

The premise of the third party claim is that the collective bargaining agreement gave the union control over the employment, management and supervisory decisions of the defendants. This premise is not borne out by a review of the collective bargaining agreement or by the facts of this case as contained in the affidavits submitted by defendants/third party plaintiffs. With respect to Santiago's discharge in 1988, the union had an obligation to represent the employee fairly, *Vaca v. Sipes,* 386 U.S. 171, 194, 87 S.Ct. 903, 918–19, 17 L.Ed.2d 842 (1967), and could have been held liable if it had failed to do so. Nothing in the collective bargaining agreement suggests the union had any duty to refuse to handle a grievance. *See Lizzi v. National Ass'n of Letter Carriers,* 755 F.Supp. 68 (E.D.N.Y.1991). Although a duty of fair dealing is implied in all contracts in New York, it is doubtful that the union's duty to represent its members can be circumscribed as defendants suggest, because the employees' rights to fair representation could be jeopardized thereby. Regardless of whether the union had to represent Santiago in connection with his discharge in 1988, the union's decision to represent him was vindicated by the arbitrator's decision that discharge was too extreme a penalty for Santiago's wrongful conduct. In short, there is no merit to the claim of defendants/third party plaintiffs.

Furthermore, the defendants'/third party plaintiffs' papers show the union did not exercise any control over Santiago after his reinstatement or interfere with the defendants'/third party plaintiffs' supervision and control over Santiago and his work duties thereafter. It did not interfere with or protest his assignment to the "graveyard shift" after October 1988. It is that assignment by defendants/third party plaintiffs of an employee known to be lax, to a security-sensitive position on the only shift when no other employee shared those duties and when supervision was known to be minimal, which gave rise to the present case. The responsibility for that assignment of Santiago rests on the defendants/third party plaintiffs, as is revealed by their own affidavits. Levin Aff., ¶¶ 1–5.

## CONCLUSION

Further discovery will not change the outcome and accordingly summary judgment is granted to the third party defendants and the third party complaint is dismissed. The plaintiff's motion to sever the main action is granted pursuant to Rule 14 of the Federal Rules of Civil Procedure and the main action is remanded to the Supreme Court of New York, New York County, pursuant to 28 U.S.C. § 1447(c). The motions for attorneys' fees and costs are denied.

IT IS SO ORDERED.